On behalf of petitioner, first I want to thank the court to give me the opportunity to have this oral argument. However, I would like to first to draw the court's attention about the government's citation they filed previous to this hearing, especially the court, the case Lo Ho. I want to point out the factual, the facts of that case is different from petitioner's case. In Lo Ho, the judge decided that petitioner there went back to China, her home country, willingly. The fact was because she had to go back to work, and she only took an absent leave, and she indicated that the reason why she went back to her home country was because of the work. And petitioner, in this case, he went back to China because he had to, he had to survive in Mexico for two years. He fled from China to go to Mexico. The first time was because he was not able to get a visa to go to the United States. So the government's strongest argument seems to be that your client's testimony, that it was he was in Mexico for two years and couldn't figure out how to get to the United States. And the IJ said that's just so implausible, as is the BIA. Did he have an opportunity to explain that further in the course of the transcript of the hearing? And how do we take this implausibility argument? You know, I believe that he explained that during those two years he was trying, but he was just not able to find a way to enter the United States. And I think from the fact that he stayed there with other two teachers in Mexico for two years. They tried to struggle to hang there. They tried to enter the United States. But then when he came back, he went to a hotel or a motel and said, I want to go to the United States. And in two days somebody showed up and said, I'll smuggle you over. So the IJ focused on that and said, well, so the first statement was very implausible. And is that enough for an adverse credibility determination? I don't think so, Your Honor. The totality of the circumstances, which we don't have all the facts, actually. I mean, the petitioner was not able to testify the whole circumstances during those two years, compared with the last time he was in Mexico for just two days. What do you mean he wasn't able to testify? Did someone stop him from testifying to everything? I don't think so. It was not in the record that they went for detail about why he stayed in Mexico the first time for two years. But doesn't he have a responsibility to say that? I mean, no one stopped him from saying that. I believe so. He should have the responsibility. He should explain. So the transcript, I have it here. The question was, why didn't you leave immediately and go to the United States? And he answers, I couldn't find the channel to come to the United States. And then the IJ clearly expresses incredulity. For two years you couldn't find the channel? And his answer was no. And that was the limit of the explanation there. Yes, I understand that. However, I do like to address the issue that the cultural differences, a lot of times the thinking, the way they express themselves is not the way we normally expect. I understand that he did not answer very straightforwardly and he was vague, but that's just the way the person's personality or his culture. So are you saying your best argument is that the cultural differences caused him to seem like a liar, as opposed to that he really was a liar? That has a little bit to do with the way he answered the question and also because the fact that the time left from his entering the United States and the testimony, he forgot all of the detail. That's his explanation to me. For example, he was beaten in the detention. Then he had injury causing memory loss. But go back to the Mexico trip to the United States, I don't think he has any other explanation just that he couldn't find a way to enter the United States. That's my understanding. Let me ask you the question Judge Ikuda was asking a little bit differently. What would we have to do to find that the adverse credibility determination by the immigration judge should be overturned? Wouldn't we have to find that there was no basis in the record for that adverse credibility determination? Well, my reading of the transcript about the judge's decision, my understanding is the judge just didn't believe what he says from the outcome. And I truly... Focus for a second on the issues that Judge Ikuda asked you about. What she said, and I'll paraphrase this, is that the immigration judge made this adverse credibility determination in part because your client spent two years in Mexico and says he couldn't find a way into the United States, but after a very short time back in China, a much more difficult trip, he found a way into the United States. And he just didn't believe that he had fled China in the first place because of persecution. How can we find that finding to be without basis in the record? Tell me your best argument of why we can find that to be without basis in the record. Your Honor, honestly, I don't know how to explain to those two so different situations about the way he was able to find a way to come to the United States the second time. So you would basically concede that there's two ways to look at it. That's correct. And the IJ looked at it one way, and you're saying you would like us to look at it the other way. Correct, because all the corroborating evidence, the witness testimony regards to the Dazhong Gong's persecution in China. The witnesses, though, they talked about a general persecution, but they were not witness to your client's persecution. That's correct. But let me just go back to this implausibility for a moment. We're to say that there was substantial evidence supporting the adverse credibility determination. That's our test. Is that implausibility determination by the IJ enough to constitute substantial evidence to uphold the adverse credibility determination? And if not, why isn't it? Again, I would like to go back to the personality, the culture difference, the language barrier, and the time elapsed in between the events. And the credibility issue, it should be taken into consideration when the petitioner, when the applicant has other corroborating evidence to support his claim. Although he cannot explain clearly about one event, but he did state and explain clearly about other incidents happened to him and the reason why he left China, the reason why he wanted to come to the United States. I don't think it's just one event about how he was able to enter the United States so quickly the second time will cause him incredible. Do you want to save some time for rebuttal? Sure. Thank you. Do you have other questions? Okay. Good morning. May it please the Court. Charles Green for the Attorney General. Both the immigration judge and the board denied Mr. Cui, I believe Cui is how you say it, Mr. Cui's asylum application because they found he was not credible. And that was based on plausibility and identified implausibilities, identified material omissions, and identified lack of corroboration. I only found one omission. There were two that the EIA cited, but only one actually checked out, which was a failure. So he said that he reported weekly in oral testimony. He didn't say he reported weekly in his written testimony. So there's no inconsistency. There was just a submission of a detail. And I didn't see any case where we had upheld an adverse credibility determination based on that sort of single detail. I also, in fact, didn't find a case where we had upheld an adverse credibility determination based on this sort of implausibility. I mean, normally our cases say, well, the IJ is just speculating. I mean, we have lots of cases like that. So I wanted to find out what was the strongest specific argument or what cases were the strongest that would allow us to say based on a single omission, this finding of implausibility, and I think the IJ found a failure to corroborate the gong, that his gong was being banned. But there wasn't any inconsistency in the testimony. It was just a failure to corroborate. That that's enough to uphold the adverse credibility determination. Well, Your Honor, in the first place, the Court's stated many times that implausibility is sufficient to uphold an adverse credibility determination. In Singh v. Gonzales, 439 F. 3rd, 1100, that statement is made. Certainly, I think Loho is the best case for this. Now, the Court in Loho did not specifically say that there was an implausibility that the Board found and that they were upholding, but they did find that there was substantial evidence. There's a voluntary return case, right? I mean, there they said we think the voluntary return undercuts the adverse credibility, and they distinguished Ding, and this case sort of falls between the two cases. Well, Why did he say he returned? He said he returned for a number of reasons. It started off with it was difficult to spread DZ gong in Mexico, different culture, different language, they didn't feel comfortable, they ran out of money. And then he did say that he talked to some people back in China who said that the authorities were no longer arresting. Didn't he have a small child, too? Didn't he say he missed his child? He said he was looking forward to a family reunion. Yes. And all of those certainly are understandable, except that he had already alleged that he was detained and beaten for two weeks over 20 times, fled to Mexico with the sole purpose of entering the United States, spent two years in vain, apparently, trying to get into the United States, which he was never able to explain. And no one cut him off or prevented him. In fact, he was asked several different times, and he never explained it. So the implausibility cases that I've Counsel, can I What? Your Honor. Go ahead, Judge Hurwitz. You go first. Okay. Thank you. I'm interested in the witnesses that testified about persecution. Two witnesses, as I understand it, testified about persecution of this particular sect in China, correct? Yes, Your Honor. Mr. And both of them, yes, and I was going to get their names wrong, and that's why I said two witnesses. Both of them were granted asylum in the United States. That is correct, by the Department of Homeland Security, well, by the INS. Right. On the basis of allegations of persecution, which, so far as I can tell, match up rather neatly to Mr. Queese. They do sound very similar, Your Honor. Thanks. So should the IJ have The IJ does not discuss those. He merely says, because I find it implausible, and that's, I think, as Judge Ikuda points out, the chief adverse credibility finding, I find it implausible that you were persecuted, even though two people have testified to me about persecution very similar to that which you claim and were granted asylum. Does that create a problem for us? Not at all, Your Honor. In fact, each individual case has got to be decided on the individual merits of that asylum case. So we don't have the records of the asylum claims of Mr. Yu and Mr. Yang here in the record. But the judge did not find them less than credible, did he? There's no finding that those two witnesses were not credible. The only time that he did not believe their testimony was when they mentioned that they testified that all of the gongs were banned. That's the only time he mentioned he did not believe them. But the PIA said something like they're less than objective. I don't know if that constitutes an adverse credibility determination, though. Well, Your Honor, they did, the immigration judge and the board did mention that they had a reason to testify because they had been granted asylum and gave them their testimony somewhat lesser weight. But he had some corroboration. He had the witnesses testify. He had the single omission about the weekly report, which seems, I know you call it material, but based on our case law, it didn't seem to me to be as material as, for example, in De Leon Barrios. And so the only real thing I saw was the implausibility of his statement about not being able to get into the United States for a couple of years. And as I was saying, the implausibility cases I've seen, it's usually the explanation for a discrepancy in the record was implausible. And we've upheld that. But I didn't see a case that was like this one. And I was wondering if this would be a new area for us if we were to uphold based on this type of implausibility. Well, Your Honor, the government contends that Aloho does control in this matter because the basis for the adverse credibility determination there was that the court found it was inherently not implausible but that it was inherently incredible and that an individual who alleged persecution and alleged a well-founded fear of returning would, in fact, then return voluntarily. And actually, Aloho is fairly similar to this because you have an individual in Aloho who returns saying, oh, well, I wasn't sure how to get asylum and I only got a ten-day vacation and had to go back. In this case, Mr. Queen was safe in Mexico for two years after having alleged that he fled from this beating and detention. And the mere fact that someone said, gee, I don't think they're arresting people anymore, should not compel the court to find that a plausible story. Did the BIA base the implausibility on that? Did they identify the voluntary return? They did, Your Honor. I don't think they called it a voluntary return. I think they said that it's unbelievable that he would not be able to get into Mexico and then would return and put himself in harm's way. I see that. And to get back to your question, Your Honor, the difference that we know about in this case, as opposed to Mr. Yu and Mr. Yang, is that in this case, Mr. Queen spent two years in Mexico and then he voluntarily returned to China. In their cases, Mr. Yu said he was in Hong Kong, actually. He was never arrested or detained or harmed. He was in Hong Kong and his family called him and said, gee, there are some people here to see you and you don't want to see them. So he fled immediately to the United States. And Mr. Yang did claim that he was arrested and detained and was able to escape, but then he came right to the United States, albeit somewhat circuitously, but quickly. And neither of them have ever returned to China. And they were asked and they testified to that. So although we don't have all the ins and outs of Mr. Yu's case and Mr. Yang's case, we do know that that is one major difference. And the immigration judge actually mentioned it in his decision. As far as the material omission, there was the idea of the police continuing surveillance does enhance Mr. Kui's claim because obviously it goes to the well-founded fear if Mr. Kui returns to China. I see my time is up. Did he submit any corroboration or medical evidence? No, he did not submit any medical evidence. He said that his practice of dizzy gong cured him of the bruises that he alleged. All right, any further questions? Not for me. All right, thank you. Thank you very much. All right, you have about a minute and a half. Thank you, Your Honor. I just want to go back to the government's mention about the Loho is a controlling case in this situation. Then I will mention that this is totally different cases. In Loho, she willingly, the operative word is willingly because she had to go back to work. In my client's case, he was forced to return to China because he was not able to stay in Mexico indefinitely. And financially, emotionally, he was not able to stay there and because he thought the Chinese government is not going to arrest him anymore and he missed his family, for all those reasons, he went back after two years. It's a long time to stay in a foreign country. So I would submit to the court that this case is different from Loho's case and please the court to find differently as well. Thank you. Thank you. This matter will stand submitted.
judges: Callahan, Ikuta, Hurwitz